

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jama M. Tasfay,

                Plaintiffs,

–v–

Melissa Ramos, *et al.*,

                Defendants.

20-cv-5472 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiffs Jama M. Tasfay and Desmond Rolle, who are proceeding *pro se*, brought this action against Defendants Acacia Network, Inc., Johani Vialet-Rodriguez (collectively "Acacia Defendants"), Nadia DiSalvo, and Melissa Ramos (collectively "Municipal Defendants"). Plaintiffs allege violations under the Fair Housing Act, 24 U.S.C. § 3601 *et seq.* and violations of their Fourth and First Amendment rights pursuant to 42 U.S.C. § 1983. On September 28, 2021, this Court granted in part and denied in part Acacia Defendants' motion to dismiss. *Tasfay v. Ramos*, 20-CV-5472 (AJN), 2021 WL 4443303, at *2-3 (S.D.N.Y. Sept. 28, 2021). The Court now addresses Municipal Defendants' motion to dismiss the amended complaint. For the reasons that follow, the Court GRANTS the motion to dismiss.

I.    BACKGROUND

    Plaintiffs "resided in a DHS shelter operated by Acacia until they were removed on or about May 31, 2019." Dkt. No. 24 at 6. Plaintiffs allege that they received a paper notification from Defendant Ramos on May 30, 2019, that they would be removed the next day. Dkt. No. 9, Am. Compl. at 5. The complaint states that "[t]he only reason [Ramos] would take such a foolish action would be to discriminate," and she would have known Plaintiffs' race from the

1

personal info in the Department of Homeless Services' system. *Id.* Plaintiffs allege that they were forcibly removed by DHS police on May 31 in the presence of Defendant Vialet-Rodriguez (the Acacia Director) and another Acacia employee. *Id.* at 5, 8. During this encounter, the officers "seiz[ed] many of [Plaintiffs'] belongings and h[e]ld them outside the apartment." *Id.* at 5–6. Plaintiffs attempted to record the encounter on their cellphones but Defendant DiSalvo "hit [Plaintiff's] hand and caused [the] phone to hit the ground." *Id.* at 6.

Plaintiffs filed their original complaint on July 15, 2020, alleging violations under the Fair Housing Act, 24 U.S.C. § 3601 *et seq.*, and violations of their Fourth and First Amendment rights pursuant to 42 U.S.C. § 1983. Dkt. No. 3. They then filed an amended complaint on October 6, 2020, Dkt. No. 9, pursuant to this Court's September 2, 2020 order, Dkt. No. 8. Plaintiffs seek damages in the amount of $4 million. Am. Compl. at 6. Municipal Defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6) on April 20, 2021. Dkt. No. 40. Plaintiffs filed their opposition on May 18, 2021, Dkt. No. 45, and Defendants filed a reply in support on June 14, 2021. Dkt. No. 50.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff is not required to provide "detailed factual allegations" in the complaint. *Twombly*, 550 U.S. at 555. To survive a 12(b)(6) motion, however, a plaintiff must nonetheless assert "more than labels and conclusions." *Id.* Ultimately, the "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Id.* When applying this standard, a Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.). The Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

When a plaintiff is proceeding *pro se*, the Court holds the pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). That is, the Court will liberally construe the complaint. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). Notwithstanding this, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Kirk v. Heppt*, 532 F. Supp. 2d 586, 590 (S.D.N.Y. 2008) (cleaned up). If a *pro se* plaintiff has not pled sufficient facts to state a claim that is plausible on its face, the Court must dismiss his complaint. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

### III.   DISCUSSION

Plaintiffs allege violations under the Fair Housing Act, 24 U.S.C. § 3601 *et seq.*, and violations of their Fourth and First Amendment rights pursuant to 42 U.S.C. § 1983. The Court addresses each claim in turn.

#### A. The FHA Claim is Dismissed

Defendants assert that Plaintiffs have failed to state a claim for racial discrimination and therefore the FHA claims must be dismissed. Dkt. No. 42 at 5–6. The Court agrees for the same reasons articulated in the order dismissing in part the amended complaint against the Acacia

3

Defendants. *Tasfay v. Ramos*, 20-CV-5472 (AJN), 2021 WL 4443303, at *2-3 (S.D.N.Y. Sept. 28, 2021). The FHA makes it unlawful "[to] discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72–73 (2d Cir. 2021); *see also* 42 U.S.C. § 3604(b). Because Plaintiffs do not allege direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *Francis*, 992 F.3d at 73. Accordingly, Plaintiffs must plausibly allege that they: "(1) [are] member[s] of a protected class, (2) suffered an adverse . . . action, and [3] ha[ve] at least minimal support for the proposition that the [housing provider] was motivated by discriminatory intent."

Even liberally construing the allegations in the amended complaint, Plaintiffs have failed to plead sufficient facts to support the proposition that Defendants were motivated by discriminatory intent. The amended complaint merely alleges that "the only reason [Defendant Ramos] would take such a foolish action would be to discriminate." Am. Compl. at 5. It further asserts such an inference is reasonable because Defendant Ramos knew Plaintiffs' race from their DHS files. *Id.* Such conclusory allegations are insufficient to state a claim of discrimination under the FHA. *See Francis*, 992 F.3d at 72–73 (dismissing complaint alleging violations of FHA that lacked even "minimal support for the proposition that the [defendants] were motivated by discriminatory intent"); *Tasfay*, 2021 WL 4443303, at *2-3. Thus, even under the "less stringent standard" accorded to *pro se* pleadings, the complaint fails to sufficiently allege discrimination in violation of FHA. The Court accordingly grants Defendants' motion to dismiss as to the FHA claims.[1]

---

[1] Because the Court dismisses the FHA claim on this basis, it need not address Defendants' further arguments that the claim is barred by *res judicata*. *See* Dkt. No. 42 at 4.

B.  **Section 1983 Claims**

Plaintiffs also assert claims pursuant to 42 U.S.C. § 1983.  "To establish a claim under 42 U.S.C. § 1983, Plaintiff must show that he was denied a constitutional or federal statutory right and that the deprivation of that right occurred under color of state law."  *Favourite v. 55 Halsey Street, Inc.*, 381 F. Supp. 3d 266, 282 (S.D.N.Y. 2019).

**1.  The Fourth Amendment Claim is Dismissed**

Plaintiffs' Fourth Amendment claim must be dismissed because the complaint fails to adequately allege that they were denied a constitutional right.  Plaintiffs' Fourth Amendment claim rests on their allegation that "[t]he DHS police officers . . . seiz[ed] many of [their] belongings and [held] them outside the apartment" for an unspecified amount of time.  Dkt. No. 9 at 5–6.  Most eviction-type seizures do not violate the Fourth Amendment.  *Thomas v. Cohen*, 304 F.3d 563, 574 (6th Cir. 2002) (citing *Soldal v. Cook County*, 506 U.S. 56, 71 (1992)).  Seizing an individual's belongings during an eviction can rise to a Fourth Amendment violation only when that seizure is unreasonable.  For example, "in *Soldal*, the Supreme Court found facts sufficient to make out a § 1983 claim where the sheriffs *knew* there was no court order and yet stood by as the owners of a trailer park used excessive force to remove Soldal's trailer, badly damaging it in the process."  *Ray v. New York City Off. of the Sheriff*, 17-CV-1586 (AJN), 2018 WL 1583300, at *3 (S.D.N.Y. Mar. 27, 2018), *aff'd sub nom. Pollok v. Chen*, 806 F. App'x 40 (2d Cir. 2020); *see also Thomas*, 304 F.3d at 575 (finding an unreasonable seizure when "Defendants' involvement [in the eviction] was neither brief nor passive").  Here, Plaintiffs do not allege sufficient facts to allow "the court to draw the reasonable inference" that the seizure was unreasonable.  *Iqbal*, 556 U.S. at 678.  And while the Court construes Plaintiffs' complaint liberally, it cannot "re-write" the complaint to meet the bar necessary to establish a Fourth

Amendment violation.  *Kirk*, 532 F. Supp. 2d at 590.  Accordingly, the Court grants Defendants' motion to dismiss the Fourth Amendment claim.

### 2. The First Amendment Claim is Dismissed

Plaintiffs' First Amendment claim must be dismissed because Defendant DiSalvo is protected by the doctrine of qualified immunity.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015).  For a law to be "clearly established" its contours must be "sufficiently clear [such] that every reasonable official would have understood that what he is doing violates that right."  *Charles v. City of New York*, 12-CV-6180 (SLT)(SMG), 2017 WL 530460, at *19 (E.D.N.Y. Feb. 8, 2017) (cleaned up).  In this Circuit, courts rely upon "Supreme Court and Second Circuit precedent existing at the time of the alleged violation" to determine whether or not the law was clearly established.  *Id.*

Assuming, without deciding, that the general right to film a police officer during her official duties was clearly established in the Second Circuit at the time of the alleged violation, such a right cannot encompass Plaintiffs' behavior here.  Courts that have found a clearly established right to record police recognize that this right has limitations.  *See, e.g.*, *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 381 (S.D.N.Y. 2015) ("Certainly, the right to record police activity in a public space is not without limits . . . .); *Rivera v. Foley*, No. 3:14-CV-00196 (VLB), 2015 WL 1296258, at *10 (D. Conn. Mar. 23, 2015) ("Even if recording police activity were a clearly established right in the Second Circuit, Plaintiff's conduct is beyond the scope of that right as it has been articulated by other circuits."); *Charles*, 2017 WL 530460,

at *24 (explaining that "the right to film police activity is not absolute, but subject to reasonable time, place and manner limitations"). Chief among these limitations is when the recording "is done by the subject of the police activity." *Higginbotham*, 105 F. Supp. 3d at 381; *see Picard v. Torneo*, No. 3:16-CV-1564 (WWE), 2019 WL 4931353, at *5 (D. Conn. Sept. 16, 2019) (finding no clearly established right when the recorder was "not a journalist or even a bystander; he was a subject of [the policer officers'] investigation and performance of their official duties"). Since Plaintiffs were the subject of Defendant DiSalvo's activity during the alleged incident, their clearly established right to record a police officer (should it exist) is inapplicable here. Accordingly, Plaintiffs' First Amendment claim must be dismissed.

## IV.  CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss. Defendants' request for an extension of time to respond to the amended complaint is administratively DENIED as moot. Dkt. No. 39. This resolves Dkt. Nos. 39 and 40. The Court will resolve Acacia Defendants' pending motion for judgment on the pleadings in due course. Dkt. No. 64.

The Court finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this memorandum opinion and order to Plaintiffs and note its mailing on the docket.

SO ORDERED.

Dated: February 14, 2022
      New York, New York

_____
ALISON J. NATHAN
United States District Judge